**NOT FOR PUBLICATION**

> **FILED**
> JAMES J. WALDRON, CLERK
>
> **AUGUST 16, 2006**
>
> U.S. BANKRUPTCY COURT
> NEWARK, N.J.
> BY:  s/ RONNIE PLASNER, DEPUTY

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br><br>    Russell H. Bellis, Sr.<br><br>                    Debtor. | Case No.: 05- 41366 (DHS)<br><br>Chapter 13<br><br>Judge: Donald H. Steckroth, U.S.B.J. |

### OPINION

**APPEARANCES:**

Dean G. Sutton, Esq.
18 Green Road
Post Office Box 187
Sparta, New Jersey 07871
Attorney for the Debtor

Catherine E. Youngman, Esq.
Feitlin, Youngman, Karas & Youngman, LLC
9-10 Saddle Rive Road
Fair Lawn, New Jersey 07410
Attorney for Michael Brodhecker

Marcia Graydon
Powers Kirn, LLC
9 East Stow Road, Suite C
Post Office Box 1568
Marlton, New Jersey 08054
Attorney for Secured Creditor,
 Countrywide Home Loans, Inc.

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Before the Court is a motion by Russell H. Bellis, Sr. (the "Debtor") seeking to reject executory contracts and unexpired leases. Countrywide Home Loans, Inc. ("Countrywide"), a secured creditor, filed opposition to the Debtor's motion and a cross-motion seeking an order authorizing and requiring the Debtor to sell his real property, or in the alternative, relief from the automatic stay. Michael Brodhecker, a tenant on Debtor's property, filed a certification in opposition to the motion to reject its executory contracts and unexpired leases and in support of Countrywide's cross-motion. The Debtor subsequently filed a reply brief and attached an appraisal of the property.

## Jurisdiction

The Court has jurisdiction under 28 U.S.C. §§ 1334(b), 151, and 157(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper under 28 U.S.C. § 1409(a). The following shall constitute the Court's findings of fact and conclusions of law, in accordance with Federal Rule of Bankruptcy Procedure 7052.

## Findings of Fact

The Debtor and Marie Bellis jointly own property located at 531 Kemah Lake Road, Frankford Township, New Jersey (the "Property"). The Property consists of 2.2 acres on which is located a three bedroom residential dwelling, a metal building, a masonry building and a stone office building. On or about January 21, 2005, the Debtor and Marie Bellis entered into a three-year lease of the Property with Michael Brodhecker ("Brodhecker") which included an option to purchase. Under the lease agreement ("Lease"), Brodhecker was required to remit $2,500.00 per month in rent for use of said property. Debtor's Motion to Reject Executory Contracts and Unexpired Leases, Ex. A at Art. I; Art. III § 3.01. Although the Lease specifically prohibited the

assignment of the Lease, Brodhecker had the right to sublet the three-story residential dwelling and retain the income therefrom. Id. Ex. A at Art. VIII § 8.02.

The Lease further granted Brodhecker a three-year option to purchase the Property so long as he was not in default with the Lease obligations. Id. Ex. A at Art. XXI. Thus, Brodhecker maintained the right to exercise the option to purchase the Property at any time prior to the expiration of the Lease. Id. Ex. A at Art. XXI § 21.02. As consideration for the three-year option to purchase, the Lease required Brodhecker to install an approved septic system for the residential dwelling on the property and to remit thirty thousand dollars ($30,000.00) to the Debtor within 120 days of the execution of the Lease. Id. Ex. A at Art. XXI § 21.04.

Simultaneously, on January 21, 2005, the Debtor and Marie Bellis entered into a contract for the sale of the Property to Brodhecker. Debtor's Motion to Reject Executory Contracts and Unexpired Leases, Ex. B. The parties agreed on a purchase price of $390,000.00 which was to be offset by the $30,000.00 which Brodhecker was required to remit under the Lease as consideration for the option to purchase. Id. Ex. B §§ 2-3. The parties agreed that the closing of the sales contract would occur on January 20, 2008. Id. Ex. B § 16.

Although the specific time frame is unclear, Mortgage Electronic Reservation Systems, Inc. initiated foreclosure proceedings on the Property after the Lease and option to purchase were executed. In an apparent effort to avoid foreclosure, the Debtor and Marie Bellis entered into a second contract of sale with Brodhecker on or about July 8, 2005. This contract for sale of

the property was also for $390,000.00.[1] Debtor's Motion to Reject Executory Contracts and Unexpired Leases, Ex. C. Under the second sales contract, Brodhecker was entitled to a fifteen thousand three hundred dollar ($15,300.00) credit against the purchase price arising out of Brodhecker's lease of the Property. Id. Ex. C § 3. The parties contemplated that closing would occur on July 29, 2005 but the closing did not occur as expected.

On or about September 23, 2005, the Debtor filed a Chapter 13 Bankruptcy petition in this Court. On Schedule A of the petition, the Debtor listed a joint interest in the Property and indicated that the Property had both residential and non-residential uses. On or about January 10, 2006, the Debtor filed the instant motion seeking to reject executory contracts and unexpired leases on the grounds that Brodhecker failed to comply with the terms of the Lease. Specifically, the Debtor maintains that Brodhecker failed to remit the required rental payments even though he has collected income from subletting the Property's residential building. The Debtor further includes a blanket assertion that there may be other violations of the Lease. In addition, the Debtor claims that when he entered into the Lease and option to purchase, he was unaware of any significant tax liability which would be incurred upon selling the Property. However, if the property is sold to Brodhecker as contemplated, the Debtor now contends that the purchase price will not satisfy the tax liability occasioned by the sale. As a result, the Debtor seeks to reject all executory contracts and unexpired leases with Brodhecker.

---

[1] It should be noted that Exhibit C as attached to Debtor's Motion to Reject the Executory Contract is a copy of the second contract for sale of the real property. Nevertheless, the contract submitted is signed by Russell Bellis, Sr. as the seller and Marie Bellis as the buyer. The contract as submitted does not contain Brodhecker's signature, does not appear to have been "witnessed" nor is it dated.

Countrywide, the servicing agent of Mortgage Electronic Registration Systems, filed an objection to the Debtor's motion and a cross-motion seeking an order to require the Debtor to sell the Property and vacate the automatic stay. Countrywide maintains a secured interest in the Property as it is the mortgage holder.[2] After analyzing the Debtor's schedules, Countrywide highlights that the Debtor's Chapter 13 plan neither requires payments to the trustee until April 2006 nor contemplates the sale or refinance of the Property before October 31, 2008. Countrywide filed an objection to the Debtor's plan on or about December 21, 2005.

With respect to the instant motion, Countrywide contends that the Debtor has not demonstrated a better offer for the sale of the Property. Countrywide further asserts that the $390,000.00 purchase price is sufficient to satisfy its secured claim and acknowledges that the Debtor may be entitled to a setoff of Brodhecker's credit in light of the allegations that Brodhecker has failed to pay rent. In addition, Countrywide filed a cross-motion seeking to lift the automatic stay on the grounds that its interest is not being adequately protected. Countrywide asserts that since the petition date the Debtor has not made any mortgage payments. Through January 1, 2006, it is alleged the Debtor is delinquent in the amount of $11,387.13. The record is unclear as to whether the Debtor remitted payments for the months thereafter.

Brodhecker, the prospective purchaser of the Property and a tenant under the Lease, filed a certification in opposition to the Debtor's motion and in support of Countrywide's cross-motion. Brodhecker's certification reiterates Countrywide's position. Brodhecker asserts that he

---

[2] On or about July 2, 2004, the Debtor and Marie Bellis secured a mortgage on the property from Countrywide in the amount of $306,000.00. The record before the Court does not establish the present amount due under the mortgage note.

is ready, willing and able to close on the existing contract and that he has made improvements to the Property. As a purchaser in possession with a viable sales contract, Brodhecker argues that section 365(i) of the Bankruptcy Code provides a basis on which this Court should deny the Debtor's motion to reject all executory contracts and authorize the sale of the Property under section 363 of the Bankruptcy Code.

The Debtor filed a response in support of his motion and in opposition to Countrywide's cross-motion. Attached to the Debtor's response is an appraisal of the Property by the Appraisal Services of North Jersey, Inc, which values the Property at $462,000.00. In light of this appraisal, the Debtor argues that compelling the sale of the Property for $374,000.00 (the $390,000.00 purchase price less the $15,300.00 credit) will yield the Debtor $87,000.00 less than the fair market value of the Property. In addition, the Debtor recognizes that upon the sale of this Property, capital gains taxes will be triggered. It is the Debtor's contention that the $390,000.00 purchase price is insufficient to satisfy Countrywide's mortgage, the closing costs as well as the capital gains taxes and thus should not be required. The Debtor further argues that Countrywide is adequately protected by the value of the Property and that the Chapter 13 plan proposed to modify the terms of Countrywide's loan. Finally, the Debtor states that he is current with his Chapter 13 payments and requests that the Court grant his motion and deny Countrywide's cross-motion.

At the hearing, the Debtor through counsel explained the basis for his motion seeking to reject the executory contracts and unexpired leases with Brodhecker. First, Brodhecker has failed to remit monthly rental payments under the Lease. The Debtor, however, does not identify the total amount of rent allegedly due. The Debtor further states that Brodhecker failed to remit the full thirty thousand dollar security deposit which was also the consideration for the option to

purchase the Property. Brodhecker only remitted twenty-two thousand dollars ($22,000.00). The Debtor does acknowledge that Brodhecker installed a septic system for the residential building as required. Nevertheless, it is argued that Brodhecker's failure to comply with the Lease obligations is sufficient grounds to reject the Lease and related sales contracts. Arguably, rejection of the Lease and sales contracts is within the Debtor's business judgment since the value of the Property has appreciated and the capital gains tax liability which will be incurred if the sale to Brodhecker is completed will eliminate any proceeds available to the Debtor or the Trustee.

It is undisputed that Brodhecker has been in possession of the property since January 21, 2005. Brodhecker, through counsel, argued at the hearing that he has installed the septic tank, performed various improvements on the property and provided a twenty-two thousand dollar ($22,000.00) security deposit. Brodhecker asserted that the second contract for sale was executed in July of 2005 to provide an expedited closing date. In September 2005, Brodhecker intended to close on the Property; he maintained the necessary funding and was ready, willing and able to purchase the Property. Neither the Debtor nor Marie Bellis attended the scheduled closing. Brodhecker has filed a proof of claim in this proceeding, remains in possession of the Property and has paid the utility expenses. Brodhecker requests that the Court protect his interests by applying section 365(i) of the United States Bankruptcy Code. 11 U.S.C. § 365(i).

Counsel for the secured creditor argued that when the Debtor's motion was initially filed the purchase price of $390,000.00 appeared to be adequate to satisfy its claim. It is unclear whether that is still the case. In the alternative, the secured creditor requests that this Court lift the automatic stay since its interest is not being adequately protected because the Debtor has not submitted monthly mortgage payments.

<u>Legal Analysis</u>

In determining whether this Court may reject the Debtor's executory contract for the sale of the Property, the Court must explore the provisions of section 365(i) of the United States Bankruptcy Code. Section 365 provides in relevant part -

> (i)(1) If the trustee rejects an executory contract of the debtor for the sale of real property . . . under which the purchaser is in possession, such purchaser may treat such contract as terminated, or, in the alternative may remain in possession of such real property . . .
>   (2) If such purchaser remains in possession -
>> (A) such purchaser shall continue to make all payments due under such contract, but may, offset against such payments any damages occurring after the date of the rejection of such contract caused by nonperformance of any obligation of the debtor after such date, but such purchaser does not have any rights against the estate on account of any damages arising after such date from such rejection, other than such offset; and
>> (B) the trustee shall deliver title to such purchaser in accordance with the provisions of such contract, but is relieved of all other obligations to perform under such contract.
>
> (j) A purchaser that treats an executory contract as terminated under subsection (i) of this section, or a party whose executory contract to purchase real property from the debtor is rejected and under which such party is not in possession, has a lien on the interest of the debtor in such property for the recovery of any portion of the purchase price that such purchaser or party has paid.

> 11 U.S.C. § 365(i)-(j).

The Legislative History and Comment of section 365(i) provides that:

> Subsection (i) gives a purchaser of real property under a land installment sales contract similar protection [as § 365(h) provides to lessees]. The purchaser, if the contract is rejected, may remain in possession or may treat the contract as terminated. If the purchaser remains in possession, he is required to continue to make the payments due, but may offset damages that occur after rejection. The trustee is required to deliver title, but is relieved of all other obligations to perform.

> H.R.Rep. No. 595, 95th Cong., 1st Sess. 349 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 60 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6305-06, 5787, 5846.

In <u>McCannon v. Marston</u>, the Third Circuit stated that "[s]ection 365(i) permits a purchaser who is in possession under such executory contract that has been rejected by the trustee the choice of treating the contract as terminated or remaining in possession." 679 F.2d 13, 17 (3d Cir. 1982). If such purchaser opts to remain in possession after the rejection, "the purchaser is obliged to continue making all payments due under the contract and the trustee must deliver title to the purchaser in accordance with the terms of the contract." <u>Id.</u>  The Third Circuit further recognized that the protections of section 365(i) were intended to apply to all executory contracts for the sale of property and are not limited to land installment contracts. <u>Id.</u>

In <u>In re Maier</u>, the United States Bankruptcy Court for the Western District of New York considered whether to lift the automatic stay to allow a creditor to pursue a state court action for specific performance of an option to purchase real property. 127 B.R. 325 (Bankr.W.D.N.Y. 1991). In <u>Maier</u>, the debtor entered a lease agreement of his farm with the tenant for a one-year term which had both a renewal provision and an option to purchase. <u>Id.</u> at 326. Years after the lease agreement, the tenant initiated an action in the state court seeking specific performance as to the purchase option. <u>Id.</u> Tenant, who was in possession of the property, argued that "he exercised the option and is ready and willing to pay the $400,000.00 purchase price but the Debtor refused to accept the purchase price and convey title." <u>Id.</u> Shortly thereafter, the debtor filed for bankruptcy and the tenant filed a motion to lift the automatic stay to continue the state court action for specific performance. <u>Id.</u> At the hearing to lift the automatic stay, the debtor conceded that "if the option was properly exercised, an executory contract for the purchase of the farm was created." <u>Id.</u> Nevertheless, the debtor argued that tenant breached the lease and failed to properly exercise the option. <u>Id.</u> The debtor further argued that section 365(i) was only

9

applicable to executory contracts where the purchaser gained possession through a prior conveyance of title. Id. at 327.

The Maier Court concluded that limiting the type of contract to which section 365(i) applied ignores congressional intent to protect third parties who enter transactions with the debtor where the debtor is the owner of real property. Id. The Maier Court reasoned that "[t]here is nothing in the language of the section or the policy behind the section which would support an interpretation which excludes a purchaser in possession pursuant to a form of contract other than a 'land installment sales contract.'" Id. The Maier Court noted that "accepting an option to buy contained in a lease, the option becomes a binding contract of sale and the tenant becomes a purchaser in possession." Id. The Court found that if the tenant properly exercised the option to purchase, then he was a purchaser in possession under New York law as the option became a binding contract for the sale of the property. Id. at 328. In such instance, the debtor may reject the sales contract; but the tenant would be afforded the protections of section 365(i). Id. Alternatively, however, "if it is determined that [tenant] did not properly exercise the option, or by his prior acts, breached the lease and thereby terminated the option, then he must surrender the property . . ." Id.

In the present case, this Court must examine the agreements between the parties to determine whether Brodhecker may be considered a purchaser in possession under a valid contract and thus entitled to the protections of section 365(i). The parties executed two agreements. The first agreement was the Lease with an option to purchase the property. By the terms of the Lease, the option to purchase was conditioned on Brodhecker's installation of a septic tank in the residential dwelling and the payment of $30,000.00 within 120 days of executing the Lease. It is undisputed that Brodhecker only remitted $22,000.00 rather than the

10

full amount of the required payment. Thus, Brodhecker failed to comply with the specific conditions of the option and lost the right to compel a sale on the terms set forth in the January 21, 2005 option agreement. The Court therefore finds that under the January 21, 2005 agreement, Brodhecker is merely a lessee in possession without a binding option to purchase the Property.

Recently, the United States District Court for the District of New Jersey in In re Nickels Midway Pier, LLC issued a decision on the application of section 365(i) under analogous circumstances. 341 B.R. 486 (D.N.J. 2006).[3] The Nickels Court reversed and remanded a decision of the United States Bankruptcy Court for the District of New Jersey, 332 B.R. 262 (Bankr.D.N.J. 2005) which allowed a Chapter 11 debtor to reject an executory contract with a lessee and afforded the lessee protections under section 365(i). Nickels Midway Pier, LLC ("Nickels") entered a written lease agreement with Wild Waves, LLC ("Wild Waves"). 341 B.R. at 490. By the terms of the agreement, Wild Waves would lease seventy percent of a pier located at 3500 Boardwalk, Wildwood, New Jersey for the purpose of building and operating a water park. Id. Notably, the lease did not mention any agreement that Nickels would sell the entire pier to Wild Wave. Id. Nevertheless, Wild Waves argued that it had an oral agreement with Nickels to purchase the pier. Id. Wild Waves, however, did not provide a deposit or the purchase price while Nickels did not deliver the deed. Id.

In 2001, Nickels filed a civil action in the New Jersey Superior Court, Chancery Division. Id. at 491. Wild Waves subsequently filed a counterclaim on the grounds that an oral contract for the sale of the pier existed between the parties. Id. Nickels later filed a chapter 11 petition and shortly thereafter filed a motion to reject its lease with Wild Waves pursuant to

---

[3] Neither party to this motion briefed nor argued the implementation of the Nickels decision.

section 365. Id. In response, Wild Waves filed a motion seeking to lift the automatic stay to pursue its counterclaims in the Chancery Division. Id. The Bankruptcy Court granted the motion to lift the automatic stay and reserved its decision on the motion to reject the lease pending the outcome of the Chancery matter. Id. The Chancery Division determined that Nickels and Wild Waves entered a binding agreement to lease a portion of the pier and then entered an agreement to purchase the entire pier in a written but unexecuted agreement of sale. Id. The Chancery Division further concluded that the purchase price of the pier was $5,550,000.00. In light of the Chancery Division decision, Nickels sought to proceed with its motion to reject the executory contracts. Id. at 492.

The Bankruptcy Court first concluded that the sales agreement was executory since substantial performance remained outstanding on both sides of the contract. Id. Next, the Bankruptcy Court concluded that the debtor was exercising reasonable business judgment in rejecting the executory contract because real estate values in Wildwood New Jersey had appreciated and debtor had received two substantially higher offers to purchase the pier. Id. The Bankruptcy Court next concluded that section 365(i) preempted Wild Waves' claim for specific performance. Id. Finally, the Bankruptcy Court held that the debtor could reject the agreement pursuant to section 365(a) but that Wild Waves was entitled to protections under section 365(i), as a purchaser in possession.

The District Court in Nickels initially recognized that "if a bankruptcy court approves the rejection of an executory contract or unexpired lease pursuant to § 365(a), the Bankruptcy Code provides certain protections to the other party to the lease or contract. In particular, § 365(h) and § 365(i) provide some protection, respectively to lessees and purchasers in possession of real property under a contract for sale." Id. at 494. Specifically, section 365(i) "[c]arves out a limited

12

exception to a debtor's ability to reject a contract for the sale of real property. It creates certain protections for a purchaser already in possession of the real property whose contract for sale has been rejected by the debtor." Id.

The District Court in Nickels concluded that the Bankruptcy Court improperly applied section 365(i) because it viewed the lease agreement and the oral sales agreement as one seamless agreement. Exploring the provisions of each documents, the District Court found that the "terms and operation of the two parts of the agreement between Nickels and Wild Waves illustrate their independent nature." Id. at 495. Obligations under the lease agreement were not conditioned on the performance of the obligations set forth in the oral sales agreement. Id. "Viewing the lease and the oral contract for sale as separate aspects of the agreement," the District Court concluded that Wild Waves was 'in possession' of the pier pursuant to the lease agreement rather than the oral contract for sale. Id. at 497. Consequently, the District Court held that section 365(i) was not applicable since "there is no contract for sale 'under which [Wild Waves] is in possession' of any part of the pier." Id. The District Court recognized that the Nickels situation was unusual since the party in possession of the real property under a lease also maintained a separate yet related contract for sale. Id. at 498.

In addition, the District Court affirmed the Bankruptcy Court's ruling that Wild Waves' claim for specific performance can be discharged in a bankruptcy proceeding. Id. at 498. The Nickels Court recognized that if the remedy of specific performance was removed from the definition of a claim dischargeable in bankruptcy, then the provision of section 365 would be rendered meaningless. Id. at 500. "The fact that a creditor's specific performance remedy is preferable to a damages remedy does not mean that a creditor's right to specific performance cannot be reduced to a claim in bankruptcy." Id. The District Court remanded the proceedings to

allow the Bankruptcy Court to analyze the rejection of the lease and oral contract for sale under section 365 independently.

In light of Nickels, this Court must first determine whether the Lease with option to purchase the Property and the second sales contract are independent components of the parties' overall agreement as to the disposition of the Property. The express language of section 365(i) provides that the section applies when "the trustee rejects an executory contract of the debtor for the sale of real property . . . under which the purchaser is in possession." 11 U.S.C. § 365(i). Thus, it is critical to determine the nature of the executory contract. The first agreement in question was the Lease with an option to purchase. By the terms of the Lease, the option to purchase was conditioned on the satisfaction of two prerequisites. Brodhecker was required to install a septic system in the residential dwelling and remit a $30,000.00 payment within 120 days of execution of the Lease. Brodhecker failed to satisfy both conditions since he only paid $22,000.00. This default voids the option to purchase. Consequently, the option to purchase the Property expired and the agreement remained only a lease.

The second agreement describes itself as an amendment of a prior contract of sale. For Brodhecker to prevail, this Court must conclude that the execution of the second document amended the first, and is not itself a separate and distinct contract. If both documents are part of a single agreement, then Brodhecker would be in possession under an executory contract for sale and entitled to the protections of section 365(i). If, however, the two contracts are distinct, then Brodhecker is in possession under the Lease without an option to purchase, and the purchaser, who is not in possession, under a sale contract. Brodhecker is in the unique position, like Wild Waves in Nickels, of being 'in possession' under a Lease while simultaneously maintaining an executory contract to buy. Neither the Lease nor sale contract satisfies all of the criteria of

14

section 365(i). Therefore, Brodhecker is not entitled to the protections of section 365(i) since he is in possession of the Property under the terms of the Lease and not pursuant to a contract of sale.

Pursuant to section 365(a), the "trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). An executory contract, as defined by Vern Countryman is "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." Sharon Steel Corp. v. National Fuel Gas Dist. Corp. (In re Sharon Steel), 872 F.2d 36, 39 (3d Cir. 1989); see Countryman, Executory Contract in Bankruptcy, Part 1, 57 Minn. L. Rev. 439, 460 (1973). The Third Circuit has adopted the business judgment standard for determining whether to approve the assumption or rejection of an executory contract. Sharon Steel, 872 F.2d at 39-40. To satisfy the business judgment test, "the trustee or debtor in possession needs to establish that rejection will benefit the estate. Once the debtor meets it burden, the non debtor party bears the burden of proving that the debtor's decision derives from bad faith, whim or caprice." In re Central Jersey Airport Services, 282 B.R. 176, 183 (Bankr.D.N.J. 2002)(citing In re Sharon Steel, 872 F.2d 36 (3d Cir. 1989) and In re Audra-John Corp., 140 B.R. 752, 759 (Bankr.D.Minn. 1992)). Here, the Debtor has argued that rejection of the sales contract satisfies the business judgment test. As demonstrated by the submitted appraisal, the value of the Property has significantly increased from the $390,000.00 purchase price set forth in the contract for sale. Clearly, rejection of the sales contract for a sum less than fair market value is in the best interest of the estate.

The Debtor also argues for rejection of the Lease. Here, Brodhecker has failed to pay rent under the Lease, while collecting rent from his tenant on the residential area of the Property. The Lease may also be rejected under the Debtor's business judgment so the Property can be effectively marketed for sale without the burden of the Lease being an issue, or at the very least, be rented by the Debtor with the estate obtaining rental income. Thus, the Debtor's motion to reject the executory contracts and unexpired leases is GRANTED.

This Court will not grant the relief sought by Countrywide and Brodhecker in the cross-motion seeking an order requiring the Debtor to sell his Property. Although Brodhecker is not a purchaser in possession for the purposes of section 365(i), this Court should consider the relief afforded by section 365(j) of the Bankruptcy Code. 11 U.S.C. § 365(j). Section 365(j) provides that "a party whose executory contract to purchase real property from the debtor is rejected and under which such party is not in possession, has a lien on the interest of the debtor in such property for the recovery of any portion of the purchase price that such purchaser or party has paid." 11 U.S.C. § 365(j). To the extent Brodhecker has made any payment towards the purchase price, he is not entitled to a lien afforded by section 365(j). However, this lien is adequately protected by the substantial equity in the Property.

Finally, the Debtor has not submitted mortgage payments to the secured creditor and for this reason, it is argued that Countrywide's interest is not adequately protected and the stay should be lifted. However, the equity in this Property adequately protects the secured creditor's interest at this time and the Debtor's plan addresses modification of the mortgage under section 1325 of the Bankruptcy Code. see 11 U.S.C. § 1325. Any objections to the plan will be heard in conjunction with confirmation of the plan. For the time being, the secured party's interest is adequately protected and the cross-motion to vacate the stay is DENIED.

A copy of an order in conformance with this opinion is attached.

                              s/    **Donald H. Steckroth**
                              _____
                              DONALD H. STECKROTH
                              UNITED STATES BANKRUPTCY JUDGE

Dated: August 16, 2006